UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
PEDRO CHAMORRO,                          :
                                         :
       Plaintiff,                       :  CASE NO.: 1:20-CV-6077-LJL
                                         :
  -against-                             :  AMENDED COMPLAINT FOR AN
                                         :  EQUITABLE ASSESSMENT OF
AMYRIS, INC., JOHN DOERR, GEOFFREY       :  ATTORNEYS' FEES AND EXPENSES
DUYK, PHILIP EYKERMAN, CHRISTOPH         :
GOPPELSROEDER, FRANK KUNG, JAMES         :  DEMAND FOR JURY TRIAL
MCCANN, JOHN MELO, STEVE MILLS,          :
CAROLE PIWNICA, PATRICK YANG, and        :
LISA QI,                                 :
                                         :
       Defendants.                     :
---------------------------------------- X

Plaintiff Pedro Chamorro ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including the investigation of counsel and a review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Amyris, Inc. ("Amyris" or the "Company") and the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Amyris, the "Defendants") in connection with the materially incomplete and misleading proxy statement filed in violation of the Securities Exchange Act of 1934 ("Exchange Act"). Defendants mooted Plaintiff's claims by filing supplemental disclosures which cured Defendants' previous disclosure violations and provided Amyris stockholders with information material and necessary to cast an informed vote. Plaintiff now seeks attorneys' fees and expenses for securing a common benefit proportionally shared by Amyris stockholders.

11

2. On June 1, 2020 and June 4, 2020, the Company entered into (1) a loan agreement amendment with Foris Ventures LLC ("Foris") (the "Loan Agreement Amendment"), which provides Foris with the option to convert the Company's debt obligations in exchange for common stock in the Company, and (2) issuance of shares of the Company's common stock in a private placement to certain accredited investors (the "Offering", and together with the Loan Agreement Amendment referred to as the "Transactions").

3. On July 6, 2020, to solicit Amyris stockholders' to vote in favor of the Transactions Defendants filed a materially incomplete and misleading proxy statement with the United States Securities and Exchange Commission ("SEC") (the "Proxy"), which recommended Amyris stockholders approve the Transactions in two proposals presented at the stockholder meeting held on August 14, 2020 (the "Shareholder Vote"), the proposals were as follows:

Proposal 1: Approval of the issuance of shares of the Company's common stock issuable upon exercise by Foris of its option to convert all or any portion of the secured indebtedness outstanding under the Amended and Restated Loan and Security Agreement dated October 28, 2019, as further amended on June 1, 2020, into shares of the Company's common stock, in accordance with Nasdaq Listing Standard Rule 5635(d).

Proposal 2: Approval of the issuance of shares of the Company's common stock issuable upon the conversion of the Company's Series E Convertible Preferred Stock in accordance with Nasdaq Listing Standard Rule 5635(d).

4. On August 4, 2020, Plaintiff filed his complaint in the above-captioned action against Defendants for their violations of Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a) and 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9 (the "Complaint"). Specifically, the Complaint alleged that the Proxy omitted material information concerning: (i) the background of the Transactions; (ii) the formation of the Pricing Committee and their derivation of the financial terms of the Transactions; and (iii) the identification and conflicts of interest of interest faced by

11

Jefferies LLC ("Jefferies") and Cowen and Company, LLC ("Cowen", together with Jefferies referred to as the "Placement Agents"), as well as the compensation to be received for their role in the Transactions.

5.   Thereafter, on August 5, 2020, Defendants filed supplemental disclosures with the SEC in an additional definitive proxy statement to remedy the misleadingly incomplete Proxy and moot Plaintiff's Action (the "Supplemental Disclosures"), and thereby conferring a substantial, common benefit on Amyris stockholders. The Supplemental Disclosures provided Amyris with plainly material information that was required to be disclosed to prevent violations of federal securities laws.

6.   Armed with the Supplemental Disclosures, Amyris stockholders were able to fairly understand the Loan Agreement Amendment and Offering, and so were able to cast a fully informed vote at the August 14, 2020.

7.   Plaintiff now amends his Complaint to seek an equitable assessment of attorneys' fees and expenses. The Supplemental Disclosures contained material information and were disclosed as the result of Plaintiff's litigation efforts. Therefore, Plaintiff and his counsel have conferred a substantial benefit upon Amyris stockholders, entitling Plaintiff's counsel to an award of fees and expenses in an amount to be determined by the Court or the trier of fact in addition to reimbursement for their actual out-of-pocket costs. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).

**JURISDICTION AND VENUE**

8.   This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Amyris common stock trades on Nasdaq GS, which is headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

**PARTIES**

12. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Amyris common stock.

13. Defendant Amyris is a Delaware corporation and maintains its principal executive offices at 5885 Hollis Street, Suite 100, Emeryville, California 94608. Amyris' common stock is traded on the NASDAQ Global Select under the ticker symbol "AMRS."

11

14. Defendant John Doerr is a director of the Company.

15. Defendant Geoffrey Duyk is a director of the Company.

16. Defendant Philip Eykerman is a director of the Company.

17. Defendant Christoph Goppelsroeder is a director of the Company.

18. Defendant Frank Kung is a director of the Company.

19. Defendant James McCann is a director of the Company.

20. Defendant John Melo is the Chief Executive Officer, President, and a director of the Company.

21. Defendant Steve Mills is a director of the Company.

22. Defendant Carole Piwnica is a director of the Company.

23. Defendant Patrick Yang is a director of the Company.

24. Defendant Lisa Qi is a director of the Company.

25. The Defendants referred to in ¶¶ 14-24 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Amyris they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I. **Background of the Company and the Transactions**

26. Amyris is a biotechnology company headquartered in Emeryville, California. Amyris's products include ingredients for cosmetics, flavors, and fragrances. Amyris owns three brands: Biossance and Pipette, for beauty and baby skincare, and Purecane, a sugar substitute. The company went public on September 28, 2010.

27. On July 6, 2020, Amyris filed the deficient Proxy with the SEC in order to solicit shareholder approval for the Transactions. Yet, the Proxy failed to state any reasons behind

11

management's desire to engage in the Offering or reasons for allowing Foris' to convert secured indebtedness into equity in the Company – despite the dilution this causes for the Company's shareholders.

28.     The deficiencies in the Proxy were of especially great concern to shareholders considering that certain members of the Board stand to gain tremendous financial benefits unique to themselves from the Transactions, and so had interests departing from the non-insider Board members. In particular, Defendant Doerr indirectly owns all membership interests of Foris, which holds an approximately 31.5% ownership interest in the Company. As a consequence of the Transactions, Foris now has the option to convert Company indebtedness into common stock at a substantial discount to its current market price. Likewise, Defendant Kung is affiliated with Vivo Capital LLC, an accredited investor participating in the Offering that beneficially holds a 6.4% ownership interest in the Company. As a result, two of the Individual Defendants, holding a combined ownership interest of nearly 40%, will receive substantial benefits as a result of the Transactions.

29.     Moreover, the Transactions come in the midst of the COVD-19 Pandemic, at a time when greater scrutiny of corporate disclosures is necessary in order to safeguard shareholder interests in a volatile market. Concerningly, the Transactions will dilute the Company's common stock and lessen the value of the stock on a per share basis. Defendants omitted information for shareholders to decide how to vote, including information as simple as the Company's motivation for engaging in the Transaction. For the following reasons, this information was material and its disclosure provided the Company's stockholders with a substantial, common benefit.

II.     **Plaintiff Acquired Material Information Omitted From The Proxy, Thereby Conferring A Substantial Benefit**

30.     According to the Supplemental Disclosures obtained by Plaintiff, the

Transactions were considered a means to satisfy certain obligations pursuant to outstanding debt instruments, to support general corporate purposes, including working capital, and for potential additional repayment of the Company's outstanding debt obligations. Even this basic level of disclosure, the very reasons for management's decision to dilute the Company's stock, was omitted from the Proxy. The Supplemental Disclosures covered the background of the merger and several other categories of material omissions, as identified below.

31.     On August 5, 2020, the Company filed Supplemental Disclosures with the SEC, after Plaintiff filed his Complaint, directly addressing the issues raised:

> **SUPPLEMENTAL DISCLOSURE TO THE PROXY STATEMENT**
>
> The disclosure in the Proxy Statement in the section titled "**Questions and Answers**" beginning on page 2, is hereby supplemented by adding the following disclosure:
>
> **Why did the Company enter into the transactions underlying the proposals?**
>
> Through the Offering and the Loan Agreement Amendment, the Company raised funds to satisfy certain obligations pursuant to outstanding debt instruments, to support general corporate purposes, including working capital, and finally for potential additional repayment of the Company's outstanding debt obligations. The Offering and the Loan Agreement Amendment have been approved by the Pricing Committee and the Board, with the conversion of the shares of the Preferred Stock into shares of Common Stock being submitted for approval by the Company's stockholders through the proposals set forth in the Proxy Statement.
>
> The disclosure in the Proxy Statement in the section titled "**Proposal 1 — Approval of the issuance of shares of our common stock issuable upon exercise by Foris Ventures, LLC of its option to convert all or any portion of the secured indebtedness outstanding under the Amended and Restated Loan and Security Agreement dated October 28, 2019, as further amended on June 1, 2020, into shares of our common stock, in accordance with Nasdaq Listing Standard Rule 5635(d)**" beginning on page 7, and in the subsection titled "*Loan Agreement Amendment*" is hereby supplemented by adding the following disclosure:
>
> The Loan Agreement Amendment was reviewed and approved by our Board in compliance with our Related-Party Transactions Policy which, among other things, requires that any transaction with a related party must be reported under applicable

SEC rules (other than certain compensation related matters), and must be reviewed and approved or ratified by the Audit Committee of our Board or another independent body of our Board. For more information, please see subsection "*Interests of Certain Persons*" on page 11 of the Proxy Statement.

The subsection titled "*Background — A&R Loan Agreement,*" beginning on page 7, is hereby supplemented by adding the following disclosure:

On June 2, 2020, the Pricing Committee, an independent committee appointed by the Board and comprised of independent Board members Dr. Geoff Duyk and Mr. Steven Mills, met to review certain transactions and related matters with Foris and other purchasers. At this meeting, Mr. Melo, our Chief Executive Officer, outlined for the Pricing Committee, among other things, the terms of new transactions with Foris, including the Loan Amendment Agreement which was executed on June 1, 2020. Mr. Melo explained that (a) the price of Common Stock underlying the Conversion Option, as set forth in the Loan Amendment Agreement, would be equal to the per share price determined in connection with the Offering, (b) the interest rate under the Loan Amendment Agreement would be 6% per annum (reduced from 12%), and (c) no principal or interest payments would be due prior to July 1, 2022, the maturity date under the new Loan Amendment Agreement. The Pricing Committee asked questions regarding the terms of the Loan Amendment Agreement, including regarding the amount of proceeds that the Company expected to receive, the total outstanding indebtedness of the Company, whether such terms were consistent with similar terms available from unaffiliated third parties, and alternative sources of financing available to the Company. The Pricing Committee then resolved to recommend that the Board approve and ratify the Loan Amendment Agreement. The Board, excepting Mr. Doerr who participated solely for purposes of satisfying quorum requirements, approved the Loan Agreement Amendment by unanimous written consent on June 2, 2020.

The disclosure in the Proxy Statement in the section titled "**Proposal 2 — Approval of the issuance of shares of our common stock upon the conversion of our Series E Convertible Preferred Stock issued in a private placement in June 2020 (the "Offering"), in accordance with Nasdaq Listing Standard Rule 5635(d)**" beginning on page 12, and in the subsection titled "*Purchase Agreements,*" is hereby supplemented by adding the following disclosure:

On May 28, 2020, the Board authorized retention of the Placement Agents, and authorized the creation of the Pricing Committee to approve the terms of the Purchase Agreements and the securities to be issued pursuant thereto, including the aggregate amount and price of such securities, the allocation between Common Stock and Preferred Stock, and the terms upon which certain shares of Preferred Stock may be converted into shares of Common Stock. The Board authorized the Pricing Committee to determine the final terms of the Offering within the following parameters: (i) the issuance of up to $175,000,000 worth of securities for a minimum purchase price of $2.60 per underlying common share; or (ii) the issuance

of up to $200,000,000 worth of securities for a minimum purchase price of $3.00 per underlying common share.

On June 1, 2020, we entered into a Purchase Agreement with Foris where Foris agreed to purchase $20,000,000 of Preferred Stock, representing a proportional investment by Foris in anticipation of the Offering, in accordance with the pricing terms for the Offering as determined by the Pricing Committee.

On June 2, 2020, the Pricing Committee resolved to conduct the Offering such that the Company could sell up to $200,000,000 worth of securities for a purchase price of $3.00 per underlying common share. The Pricing Committee also reviewed the Foris Purchase Agreement and recommended that the Board approve and ratify the Foris Purchase Agreement. The Pricing Committee also approved the filing of the Proxy Statement in connection with the Stockholder Approvals. On June 2, 2020, by unanimous written consent (with Mr. Doerr participating solely for the purpose of satisfying quorum requirements), the Foris Purchase Agreement was thereafter approved and ratified, in compliance with our Related-Party Transactions Policy which, among other things, requires that any transaction with a related party that must be reported under applicable SEC rules (other than certain compensation related matters), and must be reviewed and approved or ratified by the Audit Committee of our Board or by another independent body of our Board. For more information, please see subsection "*Interests of Certain Persons*" on page 11 of the Proxy Statement.

The Purchase Price was determined by negotiations between us and the purchasers based on a number of factors, including information about our industry, our business and risk profile, our prospects for future earnings, an assessment of our management, the general condition of the securities markets at the time of the sale, and recent market prices of, and demand for, our stock and that of comparable companies at a negotiated 12% discount to the market price of our Common Stock calculated based on the VWAPs of our Common Stock from May 8, 2020 to May 29, 2020.

Each of Jefferies LLC and Cowen and Company, LLC served as joint lead placement agents and Oppenheimer & Co. Inc. served as a co-placement agent (collectively, the "Placement Agents") with respect to the Offering, and we paid an aggregate of $9 million in fees in connection therewith corresponding to 6% of the gross proceeds of the Offering, except with respect to the Shares purchased by Affiliated Investors. H.C. Wainwright & Co. ("HCW") provided advisory services to the Company with respect to alternatives to the Offering, including a restructuring of the Company's debt instruments, and we paid $200,000 in fees in connection therewith.

The Company and Affiliated Investors had no prior relationship with the Placement Agents or HCW, except that, in the past three years, (i) Oppenheimer & Co. Inc. acted as placement agent in connection with the issuance of (a) warrants to purchase

up to an aggregate of 3,616,174 shares of our common stock in April 2018, and (b) $60 million in aggregate principal amount of senior convertible notes in December 2018, and we paid fees of approximately $0.5 million and $3.1 million, respectively, in connection with these transactions; and (ii) Rodman & Renshaw, a unit of HCW, acted as placement agent for the registered direct offering and the private placement of $95 million of our convertible preferred stock in May 2017 and we paid approximately $0.5 million in fees in connection therewith. In addition, we paid Oppenheimer & Co. Inc. fees of (a) an aggregate of $1 million in 2019, allocated to certain transactions (forbearance agreement with the holders of our 2015 Rule 144A Note; private placement of shares of our common stock and warrants to purchase shares of our common stock in April 2019; and the exchange, in May 2019, of the senior convertible notes issued in December 2018), and (b) $100,000 in 2020, for advisory services provided since November 2019.

This Supplement should be read in conjunction with the Proxy Statement. Except as specifically amended by this Supplement, all information in the Proxy Statement remains unchanged. If you have already submitted a proxy and do not wish to change your vote, you need not take any further action. If you would like to change or revoke your prior vote on any proposal, please refer to the Proxy Statement for instructions on how to do so.

32. Armed with the Supplemental Disclosures, Amyris stockholders were able to fairly understand the Loan Agreement Amendment and Offering and cast a fully informed vote at the August 14, 2020 stockholder vote. Therefore, under the common benefit doctrine, Plaintiff's counsel is entitled to attorneys' fees and expenses. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970); *accord In re Xoom Corp. Stockholder Litig.*, No. 11263-VCG, 2016 Del. Ch. LEXIS 117, at *10 (Del. Ch. Aug. 4, 2016).

33. The information Plaintiff acquired was indeed material to the vote, and so its disclosure created a benefit shared for all similarly situated stockholders. For example, the Proxy failed to disclose information concerning the Pricing Committee, which unilaterally decided at what price parties to the Transaction could acquire Company stock. The Pricing Committee arrived at a price below market value, and below what ordinary stockholders are able to purchase it for, and so the information concerning their process and conflicts was important for shareholders.

34. Likewise, the Supplemental Disclosures provided the terms of the Offering and the

11

Board's process for deciding on the terms of that Offering, including what alternative sources of financing they considered and whether they evaluated it to comparable transactions. This provided shareholders with insight into the structure and process of the Transactions which had previously been omitted, contrary to the purposes of the securities laws.

35. Previously, the Proxy also failed to disclose the Placing Agents compensation in connection with the Transactions and the terms of their engagements, including: (i) the amount of compensation the financial advisors have received or will receive in connection with their engagements; (ii) whether the they performed past services for any parties to the Transactions or their affiliates; (iii) the timing and nature of such services; and (iv) the amount of compensation received by the Placing Agents for providing such services, which as described above was now fully disclosed.

36. In other words, Plaintiff's litigation efforts "provide[d] a necessary supplement to Commission action[,]" which was the very reason the Supreme Court held stockholders have a private right of action under Section 14(a). *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (noting that the SEC examines thousands of "proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material.").

## COUNT I

**(Against All Defendants for an Equitable Assessment of Attorneys' Fees and Expenses)**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Plaintiff filed a meritorious lawsuit, which sought information material to Amyris' informed Shareholder Vote.

39. As a result of and in order to address Plaintiff's action, the Company provided the information sought by Plaintiff and material to the Shareholder Vote, on August 5, 2020, as set forth in the Supplemental Disclosures. Therefore, Plaintiff has conferred a substantial benefit to the Company's shareholders.

40. To date, Plaintiff's counsel has not received any fees for the benefit provided to Amyris' shareholders. Nor has counsel been reimbursed for their out-of-pocket expenses relating to securing the benefit.

41. Accordingly, Plaintiff's counsel is entitled to a fee in an amount to be determined by the Court or the trier of fact in addition to reimbursement for their actual out-of-pocket costs. The Individual Defendants and Amyris should pay Plaintiff's counsels' fees and reimburse their out-of-pocket expenses because it was, in the first instance, the Individual Defendants' duties and obligations to disclose all material information to Amyris' shareholders.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

B. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 8, 2020  **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*